WILCOXEN CALLAHAM, LLP
DANIEL E. WILCOXEN, SBN 054805
dan@wilcoxenlaw.com
DREW M. WIDDERS, SBN 245439
dwidders@wilcoxenlaw.com
NICHOLE A. DICKINSON, SBN 313336
ndickinson@wilcoxenlaw.com
2114 K Street
Sacramento, CA 95816
Telephone:   (916) 442-2777
Facsimile:   (916) 442-4118

Attorneys for Plaintiff, JOSEPH DANIEL NEVIS

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH DANIEL NEVIS, | Case No. |
| Plaintiff, | **COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL** |
| -vs- | **Medical Negligence** |
| RIDEOUT MEMORIAL HOSPITAL; HECTOR LOPEZ, M.D.; NATIONAL RAILROAD PASSENGER CORPORATION, Individually and dba AMTRAK; DOE 51 ENGINEER; DOE 52 CONDUCTOR; DOES 53-55 TRAIN OPERATORS;; UNION PACIFIC RAILROAD COMPANY; and DOES 1-50 and 56-75, inclusive, | **Negligence** **Premises Liability** **[Damages Exceed $25,000]** |
| Defendants. | |

COMES NOW Plaintiff JOSEPH DANIEL NEVIS by and through his attorneys, Wilcoxen Callaham, LLP, and submits this Complaint for Damages and Demand for Jury Trial against each of the Defendants named herein.

## JURISDICTION AND VENUE

Jurisdiction in this matter is appropriate pursuant to 28 U.S.C. §§ 1331 and 1349 as NATIONAL RAILROAD PASSENGER CORPORATION, individually and dba AMTRAK is a

1

federally-chartered and partially federally-owned company.

Venue is appropriate in the Eastern District of California because a substantial part of the events and/or omissions occurred in the Eastern District of California.

**GENERAL ALLEGATIONS**

1. The following paragraphs of the Complaint are made upon information and belief.
2. On or about April 2016, 29-year-old Plaintiff, JOSEPH DANIEL NEVIS, (hereafter "Mr. NEVIS") checked himself into a rehabilitation center to help him rebuild his life. The facility is in Yuba City and is called "Buddy's House."
3. For a period of eight months, Mr. NEVIS lived at the facility, working his way through the rehabilitation program.
4. At around the time of the incident, Mr. NEVIS was also doing construction work in and around Marysville and Yuba City.
5. On or around the afternoon of December 23, 2016, Mr. NEVIS finished his work for the day. What happened next is unknown by Mr. NEVIS; what is known is that at some point, he consumed alcohol.
6. At or around 9:00 p.m., Mr. NEVIS attempted to place a call to his brother, but did not make contact.
7. At or around the early hours of December 24, 2016, at approximately 1:00 a.m., Mr. NEVIS was found by a local law enforcement agency in the street. It is assumed the law enforcement officers were concerned for Mr. NEVIS' safety and welfare and, believing Mr. NEVIS was "Too drunk for jail", drove Mr. NEVIS to RIDEOUT MEMORIAL HOSPITAL. Mr. NEVIS was dropped off at the hospital at approximately 1:26 a.m.
8. Mr. NEVIS was admitted to a room at 1:42 a.m. According to the medical records, he was seen by emergency room physician HECTOR LOPEZ, M.D. for less than one minute. Despite being "Too drunk for jail" per law enforcement and suffering from tachycardia, Dr. LOPEZ discharged the patient at 1:56 a.m. and allegedly "discussed in layman's terms" with Mr. NEVIS that he was discharging him and to follow-up as

WILCOXEN CALLAHAM, LLP
2114 K Street, Sacramento, California 95816

needed. No call was placed to anyone to pick up Mr. NEVIS and/or return him to law enforcement custody. Instead, Mr. NEVIS was allowed to wander out of the RIDEOUT MEMORIAL HOSPITAL emergency department and back onto the streets that law enforcement officers had just removed him from for his own safety.

9. After being discharged from the hospital, Mr. NEVIS walked from RIDEOUT MEMORIAL HOSPITAL toward a park near RIDEOUT MEMORIAL HOSPITAL.

10. As Mr. NEVIS entered the park area near RIDEOUT MEMORIAL HOSPITAL, he walked down a well traveled road, to a well-marked, clearly visible pedestrian path, owned, leased, controlled, designed, developed, constructed, managed, operated, inspected, maintained and/or repaired, ignored and/or ratified by UNION PACIFIC RAILROAD COMPANY and/or NATIONAL RAILROAD PASSENGER CORPORATION, individually and dba AMTRAK (herafter "AMTRAK").

11. At the end of the pedestrian path are a set of mainline railroad tracks. Mr. NEVIS walked across the train tracks to where two pedestrian paths enter the park area. Mr. NEVIS tripped over the tracks and ended up on his back on the side of the tracks near the park area.

12. At approximately 2:50 a.m., a passenger train, owned, leased, controlled, operated, inspected, maintained and/or repaired by AMTRAK was traveling northbound at approximately 25 M.P.H., approaching the area where Mr. NEVIS had fallen.

13. The forward-facing video camera on the passenger train's lead locomotive shows that Mr. NEVIS was clearly visible to anyone inside the locomotive keeping a proper lookout, i.e., being alert and attentive. However, the operators of the train failed to sound the locomotive horn and failed to apply braking, emergency or otherwise, as the train approached and ran over Mr. NEVIS, amputating his left leg above the knee and his right leg below the knee.

14. In addition, despite the sounds of striking an object as large and substantial as an adult male lying on the track and amputating both of his legs, the AMTRAK passenger train continued on and the train operators made no attempt to stop the train or

WILCOXEN CALLAHAM, LLP
2114 K Street, Sacramento, California 95816

1  notify the train dispatcher or other railroad supervisors of what had occurred, either
2  because no one noticed they had run over a human being, or the operators of the
3  train did not believe it was necessary to stop or notify anyone.

4  15.  Mr. NEVIS, both legs amputated, rolled away from the tracks and began to call for
5  help. Despite repeated pleas for help, surrounded by the remains of his legs and
6  being able to see RIDEOUT MEMORIAL HOSPITAL in the near distance, no one came
7  to Mr. NEVIS' aid. He lay next to the tracks for approximately six hours until at or
8  about 8:00 a.m., when an individual riding a motorcycle dirt bike discovered Mr.
9  NEVIS. The person called 911 and gave Mr. NEVIS' location. First responders were
10  dispatched at 8:54 a.m., over 6 hours after Mr. NEVIS was discharged by Defendants
11  RIDEOUT MEMORIAL HOSPITAL and HECTOR LOPEZ, M.D. and subsequently run
12  over by Defendant AMTRAK's passenger train.

13  16.  At all times material herein, Defendants, RIDEOUT MEMORIAL HOSPITAL, and DOES
14  1 through 25, and each of them, were health care providers, organized and existing
15  under the laws of the State of California, with their principal place of business in the
16  Eastern District of California, and are now, and at all times herein mentioned were,
17  engaged in operating and managing a general hospital, clinic and/or medical care
18  facility in the State of California.

19  17.  At all times material herein, Defendants, emergency room doctor HECTOR LOPEZ,
20  M.D., and DOES 26 through 50, and each of them, were physicians, surgeons, nurses,
21  and other medical practitioners, duly licensed to practice medicine, perform surgery,
22  practice nursing and provide other medical services in the State of California, and
23  held themselves out to possess that degree of skill, ability and learning, to physicians,
24  surgeons, nurses and/or other medical practitioners in said community.

25  18.  At all times material herein, DOE 51 ENGINEER, DOE 52 CONDUCTOR, DOES 53-55
26  TRAIN OPERATORS at the time of the incident were responsible for its operation and
27  were agents, servants, contractors, subcontractors, independent contractors and/or
28  employees of Defendants AMTRAK and DOES 56-75. Defendant AMTRAK was and is,
at all relevant times to this action, a District of Columbia corporation, which owns,

4

WILCOXEN CALLAHAM, LLP
2114 K Street, Sacramento, California 95816

operates, controls and manages, among other things, a passenger railroad system, in and through the State of California and is doing business in the State of California.

19. At all times material herein, Defendants AMTRAK and UNION PACIFIC RAILROAD COMPANY and DOES 56-100 owned, leased, controlled, developed, constructed, designed, managed, operated, inspected, maintained and/or repaired the pedestrian path Mr. NEVIS used to access the railroad tracks as well as the railroad tracks themselves. Defendant UNION PACIFIC RAILROAD COMPANY was and is at all relevant times to this action a Delaware corporation doing business in the State of California.

20. The true names and capacities of Defendants, and each of them, sued herein as DOES 1 through 100, inclusive, are presently unknown to Plaintiff who therefore sue said Defendants by such fictitious names, pursuant to California Code of Civil Procedure section 474. Plaintiff is informed and believes and thereon allege that the fictitiously named Defendants, and each of them, are negligently or in some manner legally responsible to Plaintiff for the events and happenings herein referred to and proximately caused damages to Plaintiff as set forth herein. Plaintiffs will seek leave of court to amend this complaint to insert the true names and capacities of said fictitiously named Defendants, and each of them, when the same have been ascertained.

21. Plaintiff is informed and believes and thereon alleges that each of the Defendants were the actual agent, and/or ostensible agent, and/or apparent agent, partner, joint venturer, co-conspirator, lessor, lessee, and/or employee of each of the remaining Defendants, and others named herein as DOE Defendants, and in doing the acts or things alleged herein were acting within the course and scope of such agency, employment and/or other relationship stated herein.

///
///
///

# FIRST CAUSE OF ACTION

## (Medical Negligence as against RIDEOUT MEMORIAL HOSPITAL; HECTOR LOPEZ, M.D. and DOES 1 through 50)

22. Plaintiff JOSEPH DANIEL NEVIS hereby realleges and incorporates by reference, each and every allegation above, as though fully set forth herein.

23. Beginning on or about December 24, 2016, and thereafter, Mr. NEVIS was taken to RIDEOUT MEMORIAL HOSPITAL's emergency room and physician HECTOR LOPEZ, M.D. and DOES 1 through 50 and each of them, for medical needs and/or necessities. Said Defendants, and each of them, at said time and place, undertook said employment and/or undertook and agreed to diagnose, care and treat Mr. NEVIS, and to do all things necessary and proper in connection therewith, and said Defendants, and each of them, thereby entered into a patient/physician employment relationship individually, and by and through their actual or ostensible agents and employees.

24. In the course of providing and/or failing to provide medical services, attention, treatment and/or care to Mr. NEVIS, Defendants, and each of them, individually and/or while acting by and through their actual or ostensible agents, employees, joint venturers, partners, lessors, lessees and/or co-conspirators, named or unnamed as Defendants herein, while acting within the course of their employment, actual or ostensible agency or other relationship, failed to exercise that degree of due care and/or skill common to medical practitioners and/or health care providers in said community and/or geographical area, thereby breaching the duty owed by said Defendants, and each of them, to Mr. NEVIS, and/or to exercise that degree of care, skill, ability and/or learning expected of said Defendants, and each of them, and/or common to medical practitioners and/or health care providers in said community and/or geographical area.  Further, said Defendants, and each of them, so negligently treated, cared for, diagnosed, failed to care for, obtained informed consent, failed to obtain informed consent, prescribed and or failed to prescribe and/or monitor

proper medication and/or treatment, advised, examined, made and/or failed to make disclosure of relevant information, discharge, battered and/or otherwise acted negligently toward Mr. NEVIS. Further still, Defendants acts or omissions included the failure to comply with Title 42 CFR 12 § 489.24, EMTALA requirements and California Health & Safety Code section 1317 thereby "Dumping the Patient."

25. As a proximate result of the negligence, carelessness and wrongdoing of Defendants, and each of them, Mr. NEVIS, has been injured in his health, strength and activity, and has sustained grievous injury to his body and profound shock and injury to his person and nervous system, including but not limited to being run over by an AMTRAK passenger train while close enough to see RIDEOUT MEMORIAL HOSPITAL. Being struck by the train caused Mr. NEVIS to suffer a below the knee amputation of the left leg, above the knee amputation of the right leg, all of which injuries resulted in great mental, physical and nervous pain and suffering. Said injuries will result in some permanent disability to Mr. NEVIS, all to his general damage in a sum as yet uncertain, in excess of the minimum jurisdiction of this Court. Plaintiff will seek leave of court to plead and prove the nature and extent of his general damages, according to proof at time of trial, together with interest and/or pre-judgment interest thereon at the legal lawful rate.

26. As a further direct and proximate result of the negligence, carelessness and wrongdoing of Defendants, and each of them, Mr. NEVIS, has in the past and in the future will be required to employ physicians, surgeons, prosthesis providers and caregivers to examine, treat and give custodial care for said Plaintiff. The exact amount of such medical expenses is unknown, and Plaintiff will seek leave of court to plead and prove the exact amount of said expenses at the time of trial, together with interest and/or pre-judgment interest thereon at the legal lawful rate.

27. As a further direct and proximate result of the negligence, carelessness and wrongdoing of Defendants, and each of them, Mr. NEVIS, has been prevented from attending to his usual occupation, and/or has had his capacity to engage in gainful

1 employment diminished, all to his damage in an amount unknown at this time.
2 Plaintiff will seek leave of court to plead and prove the amount of lost income
3 according to proof at trial, together with interest and/or pre-judgment interest
4 thereon at the legal lawful rate.

## SECOND CAUSE OF ACTION

**(Negligence as against Defendant AMTRAK, DOE 51 ENGINEER, DOE 52 CONDUCTOR, DOES 53-55 TRAIN OPERATORS and DOES 56-75)**

28. Plaintiff JOSEPH DANIEL NEVIS hereby realleges and incorporates by reference, each and every allegation above, as though fully set forth herein.

29. As the AMTRAK train approached the incident site, Defendants AMTRAK and/or DOE 51 ENGINEER, DOE 52 CONDUCTOR, DOES 53-55 TRAIN OPERATORS and DOES 56-75, and each of them, wantonly, recklessly, negligently and carelessly operated, controlled, entrusted and maintained the train so as to cause the train to run over Mr. NEVIS at a speed of approximately 25 M.P.H., despite Mr. NEVIS being clearly visible to anyone alert and attentive and keeping a proper lookout, as is reflected in the AMTRAK train video taken at the time of the incident.

30. At all times relevant hereto, Defendants AMTRAK and DOES 56-75, inclusive, and each of them, negligently entrusted to DOE 51 ENGINEER, DOE 52 CONDUCTOR and/or DOES 53-55 TRAIN OPERATORS the train that was owned, leased, controlled, designed, developed, constructed, managed operated, inspected, maintained and/or repaired by Defendants AMTRAK and DOES 56 through 75, and each of them.

31. Defendants AMTRAK and/or DOES 56 through 75 permitted DOE 51 ENGINEER, DOE 52 CONDUCTOR and/or DOES 53-55 TRAIN OPERATORS to operate the train as their agent, ostensible or otherwise, servant, contractor, subcontractor, independent contractor and/or employee.

32. DOE 51 ENGINEER, DOE 52 CONDUCTOR and/or DOES 53-55 TRAIN OPERATORS were negligent inter alia in operating and/or supervising the operation of the train by failing to comply with safety regulations, failing to sound an audible warning

device, failing to regulate said train under safe speed, failing to keep a proper lookout, failing to observe Mr. NEVIS, failing to slow or stop the train so as to avoid running over the clearly visible Mr. NEVIS, failing to hear and react to the sound of the locomotive wheels severing Mr. NEVIS' legs and failing to report the incident to anyone.

33. As a result of the DOE 51 ENGINEER, DOE 52 CONDUCTOR and/or DOES 53-55 TRAIN OPERATORS action/inactions, Mr. NEVIS was left bleeding and abandoned on the tracks for approximately six hours before receiving medical treatment. Despite Mr. NEVIS' repeated pleas for help, he laid near the track, surrounded by the remains of his legs and looking at RIDEOUT MEMORIAL HOSPITAL in the near distance.

34. Defendants AMTRAK and DOES 56 through 75, and each of them, knew or should have known that DOE 51 ENGINEER, DOE 52 CONDUCTOR and/or DOES 53-55 TRAIN OPERATORS were incompetent or unfit to operate, engineer and/or drive the subject train. Said Defendants knew or should have known that the engineer and the other operators of the train were likely to use the subject train, or any other train, in a manner involving unreasonable risk of physical harm to others whom said Defendants should expect to share in or be endangered by the use of the their train so as to directly and proximately cause Plaintiff's injuries and damages.

35. At all times relevant hereto, Defendants AMTRAK and DOES 56 through 75, and each of them, also negligently trained or negligently failed to train DOE 51 ENGINEER, DOE 52 CONDUCTOR and/or DOE 53-55 TRAIN OPERATORS.

36. Defendant AMTRAK and DOES 56 through 75, and each of them, inter alia negligently failed to install and/or maintain and/or operate safety devices and/or systems to ensure DOE 51 ENGINEER, DOE 52 CONDUCTOR and/or DOES 53-55 TRAIN OPERATORS where being alert and attentive while operating the train so as to avoid the injuries such as the one that occurred in this case.

37. Defendants AMTRAK and DOES 56 through 75, and each of them, inter alia negligently trained or negligently failed to train the DOE 51 ENGINEER, DOE 52

CONDUCTOR and/or DOES 53-55 TRAIN OPERATORS, who inter alia negligently failed comply with safety regulations, failed to be alert and attentive, failed to keep a proper lookout in the direction the train was traveling, failed to sound audible warnings and failed to maintain the subject train at a safe speed while operating a common carrier passenger train.

38. As a proximate result of the negligence, carelessness and wrongdoing of Defendants, and each of them, Mr. NEVIS, has been injured in his health, strength and activity, and has sustained grievous injury to his body and profound shock and injury to his person and nervous system, including but not limited to being run over by an AMTRAK passenger train while close enough to see RIDEOUT MEMORIAL HOSPITAL. Being struck by the train caused Mr. NEVIS to suffer a below the knee amputation of the left leg, and above the knee amputation of the right leg, all of which injuries resulted in great mental, physical and nervous pain and suffering. Said injuries will result in some permanent disability to Mr. NEVIS, all to his general damage in a sum as yet uncertain, in excess of the minimum jurisdiction of this Court. Plaintiff will seek leave of court to plead and prove the nature and extent of his general damages, according to proof at time of trial, together with interest and/or pre-judgment interest thereon at the legal lawful rate.

39. As a further direct and proximate result of the negligence, carelessness and wrongdoing of Defendants, and each of them, Mr. NEVIS, has in the past and in the future will be required to employ physicians, surgeons, prosthesis providers and caregivers to examine, treat and give custodial care for said Plaintiff. The exact amount of such medical expenses is unknown, and Plaintiff will seek leave of court to plead and prove the exact amount of said expenses at the time of trial, together with interest and/or pre-judgment interest thereon at the legal lawful rate.

40. As a further direct and proximate result of the negligence, carelessness and wrongdoing of Defendants, and each of them, Mr. NEVIS, has been prevented from attending to his usual occupation, and/or has had his capacity to engage in gainful

10

1 | employment diminished, all to his damage in an amount unknown at this time.
2 | Plaintiff will seek leave of court to plead and prove the amount of lost income
3 | according to proof at trial, together with interest and/or pre-judgment interest
4 | thereon at the legal lawful rate.

**THIRD CAUSE OF ACTION**

**(Premises Liability as Against Defendants UNITED PACIFIC RAILROAD COMPANY; AMTRAK and DOES 51-100)**

41. Plaintiff JOSEPH DANIEL NEVIS hereby realleges and incorporates by reference, each and every allegation above, as though fully set forth herein.

42. At all times relevant hereto, the location of the incident was owned, leased, rented, marketed, controlled, secured, operated, built, constructed, developed, designed, maintained, managed, inspected and/or repaired by Defendants UNITED PACIFIC RAILROAD COMPANY and/or AMTRAK and DOES 56 through 100 and each of them.

43. Defendants, and each of them, wantonly, recklessly, negligently and carelessly owned, leased, rented, marketed, controlled, secured, operated, built, constructed, developed, designed, maintained, managed, inspected and/or repaired the real property and fixtures thereto at the site of the incident site.

44. The site of the incident was in an unsafe, dangerous and defective condition due to, inter alia, the negligent and careless ownership, leasing, operation, construction, building, design, maintenance, management, repair, control, inspection, hiring, fencing, discharge of mandatory and/or non-delegable duties, warnings, signage, visibility, obstructions, vegetation, trees and/or illuminations of same by said Defendants, and each of them. Defendants, and each of them, negligently and carelessly failed, refused and/or neglected to keep and maintain the incident site in a safe and usable condition for persons in vehicles and on foot, and negligently and carelessly failed to warn Mr. NEVIS and/or the public of the dangers of said incidents site.

///

00157714     **COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

45. Defendants, and each of them, are liable for Plaintiff's injuries and damages in that, inter alia, Defendants negligently hired, discharged mandatory and/or non-delegable duties and/or negligently owned, leased, controlled, developed, constructed, fenced, designed, managed, operated, inspected, repaired and/or illuminated the incident site; failed to place, maintain or repair proper signs and/or markings and/or devices and/or signals which would have indicated to pedestrians, among other things, how to safely cross the subject train tracks and observe oncoming trains; and failed to inspect, maintain and/or repair the area in and around the incident site.

46. Defendants failed to warn the public of the unsafe, dangerous and defective conditions at the incident site.

47. Defendants, each of whom have their own fully empowered police forces, failed to patrol and police the area and/or request public authorities patrol and police the area to deter and prevent all unauthorized pedestrian traffic on and adjacent to the railroad tracks.

48. Defendants also failed to erect a barrier or fence and/or maintain said barrier or fence after its erection to keep pedestrians from accessing the tracks, crossing or walking upon the railroad tracks at the incident site, which includes but is not limited to, a barrier preventing access from the dirt roads, pedestrian walkways and/or path(s) leading to the tracks.

49. Defendants encouraged and allowed persons in vehicles and on foot to enter the area of the tracks, walk along and/or cross the tracks through dirt roads near the tracks, pedestrian walkways and pedestrian paths that were owned, controlled, maintained, permitted, constructed by or allowed to exist by Defendants leading to and along the tracks. Prior to the incident, the fact that persons on foot frequently and routinely accessed the tracks, crossed the tracks and walked upon the tracks was known to Defendants. Worn pedestrian paths were allowed to exist upon the properties that were owned and/or controlled by Defendants, and each of them, which drew pedestrians to the tracks and encouraged pedestrians to come into the area.

WILCOXEN CALLAHAM, LLP
2114 K Street, Sacramento, California 95816

50. At the time Plaintiff encountered the unsafe, dangerous and defective conditions, Defendants, and each of them, had actual and/or constructive notice of the existence of the aforementioned unsafe, dangerous and defective conditions and the negligent hiring and discharge of mandatory and/or non-delegable duties, and failed to prevent Plaintiff from being run over at the incident site by fixing the above-described unsafe, dangerous and defective conditions.

51. Plaintiff's use of Defendants' property was reasonably foreseeable at the time of the incident. It was reasonably foreseeable that as a direct and proximate result of said acts, omissions and negligence of Defendants, and each of them, and each of their breach of duties, that caused Plaintiff to sustain general and economic damages.

52. As a proximate result of the negligence, carelessness and wrongdoing of Defendants, and each of them, Mr. NEVIS has been injured in his health, strength and activity, and has sustained grievous injury to his body and profound shock and injury to his person and nervous system, including but not limited to being run over by an AMTRAK passenger train while close enough to see RIDEOUT MEMORIAL HOSPITAL. Being struck by the train caused Mr. NEVIS to suffer a below the knee amputation of the left leg, and above the knee amputation of the right leg, all of which injuries resulted in great mental, physical and nervous pain and suffering. Said injuries will result in some permanent disability to Mr. NEVIS, all to his general damage in a sum as yet uncertain, in excess of the minimum jurisdiction of this Court. Plaintiff will seek leave of court to plead and prove the nature and extent of his general damages, according to proof at time of trial, together with interest and/or pre-judgment interest thereon at the legal lawful rate.

53. As a further direct and proximate result of the negligence, carelessness and wrongdoing of Defendants, and each of them, Mr. NEVIS, has in the past and in the future will be required to employ physicians, surgeons, prosthesis providers and caregivers to examine, treat and give custodial care for said Plaintiff. The exact amount of such medical expenses is unknown, and Plaintiff will seek leave of court to

1     plead and prove the exact amount of said expenses at the time of trial, together with

2     interest and/or pre-judgment interest thereon at the legal lawful rate.

3   54.   As a further direct and proximate result of the negligence, carelessness and

4     wrongdoing of Defendants, and each of them, Mr. NEVIS, has been prevented from

5     attending to his usual occupation, and/or has had his capacity to engage in gainful

6     employment diminished, all to his damage in an amount unknown at this time.

7     Plaintiff will seek leave of court to plead and prove the amount of lost income

8     according to proof at trial, together with interest and/or pre-judgment interest

9     thereon at the legal lawful rate.

## FOURTH CAUSE OF ACTION

**PUNITIVE DAMAGE ALLEGATIONS as Against Defendant AMTRAK and DOE 51 ENGINEER, DOE 52 CONDUCTOR, DOES 53-55 TRAIN OPERATORS and DOES 56-75)**

13   55.   Plaintiff JOSEPH DANIEL NEVIS hereby realleges and incorporates by reference, each

14     and every allegation above, as though fully set forth herein.

15   56.   The conduct of Defendants AMTRAK, DOE 51 ENGINEER, DOE 52 CONDUCTOR, DOES

16     53-55 TRAIN OPERATORS and DOES 56-75 as described herein was "despicable

17     conduct" and done with "malice" and/or with a "conscious, flagrant indifference to

18     the rights or safety of others" in that AMTRAK and DOES 56-75 failed to ensure

19     appropriate safety device and/or systems where and place to ensure DOE 51

20     ENGINEER, DOE 52 CONDUCTOR and/or DOES 53-55 TRAIN OPERATORS were alert

21     and attentive and kept a proper lookout for and/or timely reacted to objects and/or

22     person on or near the tracks and failed to train DOE 51 ENGINEER, DOE 52

23     CONDUCTOR and/or DOES 53-55 TRAIN OPERATORS to be alert and attentive and

24     keep a proper lookout for and/or timely react to objects and/or person on or near

25     the tracks.   Furthermore, Defendants DOE 51 ENGINEER, DOE 52 CONDUCTOR,

26     and/or DOES 53-55 TRAIN OPERATORS completely and recklessly failed to be alert

27     and attentive at the time the train ran over Mr. NEVIS, amputating his legs.  This is

28     evidenced by the fact that the video downloaded from the camera on the lead

WILCOXEN CALLAHAM, LLP
2114 K Street, Sacramento, California 95816

locomotive shows that it ran over Mr. NEVIS. Mr. NEVIS was clearly visible from the location of DOE 51 ENGINEER, DOE 52 CONDUCTOR and/or DOES 53-55 TRAIN OPERATORS, but those responsible individuals failed to apply emergency braking in order to slow or stop the train as quickly as possible and/or failed to sound the locomotive horn to warn Mr. NEVIS, and continued to operate the train after running over and amputating both of Mr. NEVIS' legs. Furthermore, running over an object as substantial as an adult man's legs lying across the track should have been clearly audible to the engineer and/or crew members. Defendants' failure to stop or even alert first responders resulted in Plaintiff being left bleeding, severely injured and abandoned on the tracks for approximately six hours before finally receiving medical attention; this despite Mr. NEVIS' repeated pleas for help, surrounded by the remains of his legs and close enough to see RIDEOUT MEMORIAL HOSPITAL in the near distance. As a result thereof, Plaintiff is entitled to punitive and exemplary damages against Defendant in an amount sufficient to punish and deter Defendants' conduct. Said amount is to be assessed by the trier of fact with reference to the wealth of Defendants, the damage caused to Plaintiff, and the amount necessary to deter such future conduct.

## DEMAND FOR JURY TRIAL

57. Plaintiff hereby demands a trial by jury on all causes of action.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs pray for judgment against Defendants, and each of them, as follows:

1. General damages in excess of the minimum jurisdiction of the court, according to proof at trial;
2. Medical, prosthetic devices, assistive devices, and incidental expenses, according to proof;
3. Incidental expenses incurred as a result of the above incident;
4. Damages for loss of earnings, past, present and future, according to proof;

5. For interest and/or prejudgment interest on all damages sought and/or incurred herein, at the legal, lawful rate;

6. For punitive damages as against Defendant AMTRAK and/or its agents and/or employees;

7. For costs of suit incurred herein; and

8. For such other and further relief as may be proper.

DATED: October 25, 2017          **WILCOXEN CALLAHAM, LLP**

By _____
DANIEL E. WILCOXEN
DREW M. WIDDERS
NICHOLE A. DICKINSON
Attorney for Plaintiff, JOSEPH DANIEL NEVIS