UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH DANIEL NEVIS,<br><br>Plaintiff,<br><br>v.<br><br>RIDEOUT MEMORIAL HOSPITAL, et al,<br><br>Defendants. | No. 2:17-cv-02295-JAM-AC<br><br><br><br>ORDER |

This matter is before the court on defendants National Railroad Passenger Corporation and Union Pacific Railroad Company's motion for terminating sanctions or, alternatively, sanctions in the form of adverse inferences due to evidence spoliation. ECF No. 111. This discovery motion was referred to the undersigned pursuant to E.D. Cal. R. 302(c)(1). The matter was taken under submission without hearing. For the reasons stated below, the motion is DENIED.

**I.   Relevant Background**

Plaintiff alleges that in April 2016, he checked himself into a rehabilitation center called "Buddy's House." ECF No. 1 at 2. On December 23, 2016, plaintiff at some point consumed alcohol, but knows nothing else of what happened that day. Id. In the early hours of December 24, plaintiff was found by local law enforcement in the street, and believing plaintiff to be "too

1

drunk for jail," the officers drove him to Rideout Memorial Hospital around 1:26 a.m. Id. After being seen by an emergency room physician, plaintiff was discharged at 1:56 a.m. Id. After being released, plaintiff alleges he walked down a pedestrian path and tripped over mainline railroad tracks, ending up on his back on the side of the tracks. Id. at 3. At approximately 2:30 a.m., a passenger train approached and struck the plaintiff, amputating his left leg above the knee and his right leg below the knee. Id. Plaintiff filed suit on November 1, 2017. ECF No. 1. When this case was filed, plaintiff was represented by attorney Daniel Ellsworth Wilcoxen. Id. Current counsel Raymond McElfish was substituted in on April 3, 2019. ECF No. 26.

The parties have been engaging in discovery. On January 11, 2017, eighteen days after the incident occurred, counsel for Amtrak and Union Pacific sent a letter to plaintiff's counsel, who at the time was Mr. Brian W. Plummer at Wilcoxen Callaham LLP, which stated in part "please ensure he preserves and does not alter all documents and other tangible documents related to the accident. This specifically includes . . . Mr. Nevis' mobile phone with its SIM card." ECF No. 111-3 at 2. Defendant Hector Lopez, M.D. served plaintiff with a request for production that sought all records of sent and received phone calls by plaintiff, and screen shots of any text messages sent or received, in December of 2016. ECF No. 111-1 at 6.

Plaintiff produced responses to these requests on September 24, 2018, which stated that his phone records only went back three months and he could not provide records from his carrier (Boost Mobile), but he did still have his phone. ECF No. 111-5 at 4 (stating, "I do have my phone, it is cracked, but I have two pictures attached.") Plaintiff produced three screen shots. The first shows a partial phone number with a "916" area code (Id. at 11); the second shows a partial phone number with a "530" area code and a "BROTHA THOM" name attached (Id. at 12); the third shows two text message notifications from December 25, 2016, one from "RICK" and one from "STEVE BUDDY'S HOUSE." (Id. at 13). Numbers appear above the dates listed for the text message notifications, indicating that the texts are part of larger conversations. Id. at 13. At plaintiff's deposition on May 15, 2019, plaintiff testified that he had is phone with him at the time of the accident but at some time in the night his phone battery died. ECF No. 111-6 at 10. Plaintiff testified that he left his cell phone at the scene of the accident, but his bother went to

2

retrieve it and gave it back to him. Id. at 11-12. Plaintiff responded to the question "do you still have that phone?" with "I do." Id. at 12. Counsel for Amtrak and Union Pacific admonished plaintiff to preserve evidence, stating "I ask that you preserve those text messages and don't delete them." Id.

On October 1, 2019, counsel for Amtrak and Union Pacific served plaintiff with requests for production which sought "A digital download, in readable format, of all the data on YOUR cell phone and SIM card from the day of the incident." ECF No. 111-8 at 10. Plaintiff responded late, on November 25, 2019, stating that he made a "diligent search and reasonable inquiry" but cannot comply with the request because he no longer had possession of the cell phone. Id. at 10-11. On December 17, 2019, plaintiff's counsel e-mailed defense counsel acknowledging defendant's intention to file a motion for terminating sanctions, and stating that they were again looking for the phone and/or SIM card. ECF No. 111-9 at 2. On January 8, 2020, plaintiff's counsel notified defense counsel that the phone had been found, but that the phone would not be delivered to defense counsel because the phone itself was never properly requested. ECF No. 111-9 at 9.

The current deadline for completion of discovery in this case passed on November 4, 2019. ECF No. 31. The court's initial pre-trial scheduling order clarified the meaning of the discovery deadline: "In this context, 'completed' means that all discovery shall have been conducted so that all depositions have been taken and any disputes relative to discovery shall have been resolved by appropriate order if necessary and, where discovery has been ordered, the order has been complied with." ECF No. 11 at 3. The discovery completion date in this case has been extended several times. The moving defendants acknowledge that the operative completion date is November 4, 2019. ECF No. 111-1 at 7. Plaintiff moved for an extension of the discovery deadline (ECF No. 35), the moving defendants opposed the motion (ECF No. 57), and the District Judge denied the motion (ECF No. 71).

## II. Motion

Defendants ask the court to impose sanctions pursuant to Fed. R. Civ. P. 37(e) for spoliation of evidence, arguing that plaintiff intentionally misrepresented the status of his cell

3

phone and purposefully destroyed evidence. ECF No. 111-1.  Defendants seek terminating sanctions or, in the alternative, an order that the jury be given an instruction of adverse inference.

### III. Analysis

The rules of discovery in federal cases permit the district court, in its discretion, to enter a default judgment against a party who fails to comply with an order compelling discovery. Fed. R. Civ. P. 37(b)(2)(A)(v); see also Henry v. Gill Indus., Inc., 983 F.2d 943, 946–49 (9th Cir. 1993) (upholding a district court's dismissal of an action as a discovery sanction). "A terminating sanction, whether default judgment against a defendant or dismissal of a plaintiff's action, is very severe...[o]nly willfulness, bad faith, and fault justify terminating sanctions." Connecticut Gen. Life Ins. Co. v. New Images of Beverly Hills, 482 F.3d 1091, 1096 (9th Cir. 2007) (internal citations omitted).

The Ninth Circuit has "constructed a five-part test, with three subparts to the fifth part, to determine whether a case-dispositive sanction under Rule 37(b)(2) is just: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions. The sub-parts of the fifth factor are whether the court has considered lesser sanctions, whether it tried them, and whether it warned the recalcitrant party about the possibility of case-dispositive sanctions." Id. (internal citations omitted). The district court need not find each factor favors dismissal as a condition precedent to terminating sanctions; instead, these factors provide a framework for the court's analysis. Id. "The most critical factor to be considered in case-dispositive sanctions is whether a party's discovery violations make it impossible for a court to be confident that the parties will ever have access to the true facts." Id. (internal citations omitted).

Here, none of the factors weigh clearly in favor of sanctions. While plaintiff's conduct regarding production of the cell phone is certainly questionable, defendants did not serve the request for production at issue until just over one month prior to the discovery completion deadline. Defendants never made a motion to compel on this topic, and they could not have done so because of the late date that they served their RFPs.  Thus, the court has never addressed the

issue of cell phone production prior to this motion.

Regarding the first factor of the five-part test, expeditious resolution of this case is not enhanced by sanctions because the discovery deadline in this case has passed and the case is moving forward on schedule. As to the second factor, the court's need to manage its docket, sanctions would not alleviate any docket management concerns. Again, the case is moving forward appropriately. Regarding the third factor, prejudice to the defendants, any harm to defendants is a direct result of their failure to serve the RFPs at issue on the plaintiff in a timely manner. The fourth factor, the public policy favoring disposition of cases on their merits, favors denial of defendants' motion. Finally, as to the fifth factor, the availability of less drastic sanctions, to the extent less drastic sanctions are not available it is due to defendants' own disregard of the discovery deadlines in this case.

### IV.  Conclusion

Defendants' motion for sanctions is DENIED because imposition of discovery-based sanctions would be inappropriate under the circumstances presented. Discovery in this case is closed, and no further discovery motions will be entertained absent an amendment to the case schedule.

IT IS SO ORDERED.

DATED: February 6, 2020

_/s/ Allison Claire_
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE