UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH DANIEL NEVIS,<br><br>Plaintiff,<br><br>v.<br><br>RIDEOUT MEMORIAL HOSPITAL, et al.<br><br>Defendants. | No. 2:17-cv-02295-DAD-AC<br><br>ORDER GRANTING DEFENDANT DR. LOPEZ'S MOTION AND SUSTAINING IN PART PLAINTIFF'S OBJECTIONS TO THE PROPOSED JUDGMENT LANGUAGE AND DIRECTING THE ENTRY OF JUDGMENT IN THIS CIVIL ACTION<br><br>(Doc. No. 340) |

This matter is before the court with respect to the entry of judgment following the return of the jury's verdict on October 28, 2022. (Doc. No. 331.) Since the conclusion of the jury trial, at the request of the parties, hearings have been held and briefing submitted addressing the precise language that should be appropriately employed in entering judgment pursuant to the jury's verdict. Specifically, before the court are defendant Dr. Lopez's pending motion for the reduction of noneconomic damages and application of proportionate fault filed November 15, 2022, and plaintiff's objections filed December 19, 2022, to proposed judgment language offered by the court. (Doc. Nos. 340, 350.) For the reasons explained below, the court will grant Dr. Lopez's pending motion and sustain plaintiff's objections to the proposed judgment language in part. The Clerk of the Court will be directed to enter judgment as described below.

/////

**BACKGROUND**

On November 29, 2022, a hearing was held on Dr. Lopez's pending motion.[1] (Doc. No. 345.) At the hearing, defendant Amtrak raised a verbal objection to the court entering a judgment of joint liability against all three defendants as to the economic damages awarded by the jury for the reasons stated on the record. (*Id.*) Defendant Amtrak instead proposed an alternative method of entering judgment. (*Id.*) The court ordered that defendant Amtrak file supplemental briefing addressing the court's authority to enter judgment as proffered by defendant Amtrak by December 2, 2022. (*Id.*) However, no such supplemental briefing was ever filed. Instead, pursuant to an email communication received by the court and all defense counsel from plaintiff's counsel, the court set a status conference for December 6, 2022. (Doc. No. 348.) At the status conference, the court was informed that two defendants and plaintiff had reached a settlement regarding the entry of judgment. (Doc. No. 352.) The court at that time expressed a concern regarding the entering of judgment against only one defendant, as well as the court's role in approving any post-verdict settlements reached by the parties, among other issues, for the reasons stated on the record. (*Id.*) The court again directed that the parties file additional briefing addressing these issues. (*Id.*)

On December 7, 2022, the court received an email communication from plaintiff's counsel that was sent to counsel for all parties stating that plaintiff was withdrawing all settlement offers and requesting that the court enter judgment. In response, on December 15, 2022, the court issued a notice of its proposed judgment language and directed any party objecting to the proposed judgment language to file their objections by December 19, 2022. (Doc. No. 349.) On December 19, 2022, plaintiff's counsel filed objections to the court's proposed judgment. (Doc. Nos. 350, 351.) No other party filed an objection thereto.

/////

---

[1] Defendant Rideout filed a joinder to Dr. Lopez's motion, on November 15, 2022, stating that it "adopts the arguments and grounds as stated" in Dr. Lopez's pending motion. (Doc. No. 341.) Defendant Amtrak also filed a brief stating that it "takes no position on the effect of MICRA's general damages cap and attorneys' fees cap on the proposed judgment and defers to the medical defendants." (Doc. No. 342.) On November 23, 2022, plaintiff filed an opposition to Dr. Lopez's pending motion. (Doc. No. 344.)

**ANALYSIS**

In defendant Dr. Lopez's pending motion, his counsel addressed only the computation of noneconomic damages awarded. (Doc. No. 340.) To date, no defendant has filed any briefing or expressed any other objections regarding the entering of judgment with respect to the award of economic damages. Meanwhile, plaintiff has filed a brief in opposition to Dr. Lopez's pending motion as well as objections to the court's proposed judgment language, both with respect to the computation of noneconomic and economic damages to be entered as part of the judgment in this action. (Doc. Nos. 344, 350.) The court will first address defendant Dr. Lopez's and plaintiff's arguments regarding noneconomic damages before addressing plaintiff's objections to the court's proposed judgment language with respect to the award of economic damages.

**A.   Noneconomic Damages**

In his pending motion, Dr. Lopez contends that to conform the jury's verdict in this action to the Medical Injury Compensation Reform Act ("MICRA"), California Civil Code § 3333.2,[2] and Proposition 51, California Civil Code § 1431.2,[3] the court must: (1) reduce the award of noneconomic damages to $250,000 as to the healthcare provider defendants (i.e., defendants Dr. Lopez and Rideout); (2) apportion that total of $250,000 in noneconomic damages between the two healthcare provider defendants in accordance with the proportionate fault assigned to each defendant by the jury in its verdict; and (3) enter judgment severally as to each healthcare provider defendant's proportionate share of the noneconomic damages. (Doc. No. 340.) Because Dr. Lopez and Rideout were allocated an equal share of fault under the jury verdict (i.e., 30%

---

[2] MICRA, codified as California Civil Code § 3333.2, provides: "(a) In any action for injury against a health care provider based on professional negligence, the injured plaintiff shall be entitled to recover noneconomic losses to compensate for pain, suffering, inconvenience, physical impairment, disfigurement and other nonpecuniary damage. [¶] (b) In no action shall the amount of damages for noneconomic losses exceed two hundred fifty thousand dollars ($250,000)." Cal. Civ. Code § 3333.2(a)–(b).

[3] Proposition 51, codified as California Civil Code § 1431.2 provides: "In any action for personal injury, property damage, or wrongful death, based upon principles of comparative fault, the liability of each defendant for non-economic damages shall be several only and shall not be joint. Each defendant shall be liable only for the amount of non-economic damages allocated to that defendant in direct proportion to that defendant's percentage of fault, and a separate judgment shall be rendered against that defendant for that amount." Cal. Civ. Code § 1431.2(a).

1   each), "[e]ach would owe $125,000 for noneconomic damages under the judgment." (Doc. No.

2   340 at 4.) Dr. Lopez relies on *Gilman v. Beverly California Corp.*, 231 Cal. App. 3d 121, 126–30

3   (1991) and *Mayes v. Bryan*, 139 Cal. App. 4th 1075, 1098–1103 (2006) for his proposed

4   calculation of non-economic damages.

5         Having reviewed the decisions in *Gilman* and *Mayes*, and the law interpreting MICRA,

6   the court concludes that Dr. Lopez's method of calculating the noneconomic damages among the

7   healthcare provider defendants is correct. Defendant Dr. Lopez's calculation is directly supported

8   by a footnote appearing in the *Gilman* decision that illustrates the exact scenario before this court:

> If a jury awards plaintiff $1 million dollars in noneconomic damages and apportions fault as follows—25 percent to plaintiff; 25 percent to a drug company (not a health care provider under MICRA); 40 percent to Dr. A; and 10 percent to Dr. B—, then the judgment would be calculated as follows: First, plaintiff's negligence will reduce the $1 million verdict to $750,000; the drug company will be severally liable for 25 percent of the verdict, or $250,000; the health care providers' total liability will be $250,000 pursuant to MICRA; this amount will be apportioned 80 percent to Dr. A and 20 percent to Dr. B according to their respective percentage of fault. If any of the concurrent tortfeasors is insolvent, the liability of the other tortfeasors remains unchanged.

16   *Gilman*, 231 Cal. App. 3d at 129 n.10; *see also id.* at 128 ("Under MICRA, where more than one

17   health care provider jointly contributes to a single injury, the maximum a plaintiff may recover

18   for noneconomic damages is $250,000.") (citing *Yates v. Pollock*, 194 Cal. App. 3d 195, 200–01,

19   (1987)). Moreover, the court in *Mayes* affirmed *Gilman*'s applicability to instances where there

20   are multiple healthcare provider defendants. *See Mayes*, 139 Cal. App. 4th at 1102 ("In this case,

21   where more than one defendant shares responsibility for plaintiffs' injury . . . the trial court

22   properly followed the *Gilman* approach.").

23         Therefore, under *Gilman*: first, total noneconomic damages of $21 million are reduced by

24   the plaintiff's negligence (35%) to $13,650,000; second, the non-healthcare provider defendant,

25   Amtrak, will be severally liable for 5% of the non-economic damages awarded by the jury's

26   verdict ($1,050,000); third, the healthcare providers' total liability as to non-economic damages

27   will be limited to $250,000, which will be allocated 50% to Dr. Lopez and 50% to Rideout

28   according to their respective percentages of fault (30% each). "If any of the concurrent

tortfeasors are insolvent, the liability of the other tortfeasors remains unchanged," as to their portion of noneconomic damages—i.e., the judgment on noneconomic damages is entered severally. *Gilman*, 231 Cal. App. 3d at 129 n.10; *see also* Cal. Civ. Code § 1431.2. Thus, defendants will owe the following amounts in noneconomic damages, severally: Amtrak ($1,050,000); Dr. Lopez ($125,000); and Rideout ($125,000).

In plaintiff's opposition brief to Dr. Lopez's pending motion and his objections to the proposed judgment, plaintiff offers several unpersuasive arguments contending that MICRA should not cap the amount of noneconomic damages awarded in this action.

First, plaintiff argues that MICRA is an affirmative defense which defendants waived and failed to carry their burden of proving at trial. (Doc. Nos. 344 at 5–6; 350 at 12–13.) This argument is fundamentally flawed because as the Ninth Circuit has found, "Section 3333.2 is a limitation of liability, not an affirmative defense." *Taylor v. United States*, 821 F.2d 1428, 1433 (9th Cir. 1987) (holding that defendant did not waive application of MICRA because it failed to raise MICRA in its answer or any other time before the entering of judgment). Because MICRA is not an affirmative defense which defendants must prove, plaintiff's contention that defendant "waived" the MICRA cap or failed to carry their burden of establishing the MICRA cap at trial, is mistaken. *See id.*

Second, plaintiff contends that defendants Dr. Lopez and Rideout failed to meet a statutory threshold showing of both licensing and malpractice insurance required to be entitled to the MICRA defense. (Doc. Nos. 344 at 6–7; 350 at 13–14.) However, MICRA applies to "any action for injury against a health care provider." Cal. Civ. Code § 3333.2(a). "Health care provider" is defined as any person, clinic, health dispensary, or health facility licensed by the state of California. *See id.* § 3333.2(c)(1).[4] Physicians must be licensed under Division 2 of the

---

[4] The exact MICRA provision states: "'Health care provider' means any person licensed or certified pursuant to Division 2 (commencing with Section 500) of the Business and Professions Code, or licensed pursuant to the Osteopathic Initiative Act, or the Chiropractic Initiative Act, or licensed pursuant to Chapter 2.5 (commencing with Section 1440) of Division 2 of the Health and Safety Code; and any clinic, health dispensary, or health facility, licensed pursuant to Division 2 (commencing with Section 1200) of the Health and Safety Code. 'Health care provider' includes the legal representatives of a health care provider." Cal. Civ. Code § 3333.2(c)(1).

1    California Business and Professions Code.  *See* Cal. Bus. & Prof. Code § 2052.  Hospitals in
2    California must also be licensed under Division 2 of the California Health and Safety Code.  *See*
3    Cal. Health & Safety Code § 1253.  Thus, both physicians and hospitals constitute healthcare
4    providers as defined under MICRA.  *See* Cal. Civ. Code § 3333.2(c)(1).

5           Here, plaintiff merely contends that defendant Dr. Lopez and Rideout failed to make a
6    *prima facie* showing that they are in fact licensed under California's Business and Professions
7    Code and the Health and Safety Code.  But no such showing is required under MICRA because it
8    is not an affirmative defense that defendants must prove.  *See Taylor*, 821 F.2d at 1433.
9    Tellingly, plaintiff does not argue that defendants Dr. Lopez and Rideout cannot meet these
10   requirements, only that these defendants failed to satisfy some hypothetical procedural hurdle.
11   Even if such a hurdle existed—a proposition for which plaintiff offers no legal authority—the fact
12   that both defendants are a licensed physician and licensed hospital were proven at trial through
13   testimony and were never contested by plaintiff throughout the trial.  Relatedly, plaintiff also
14   contends that MICRA was enacted to reduce malpractice insurance premiums and that given this
15   purpose a healthcare provider seeking to avail itself of MICRA's damages cap must establish that
16   they in fact held such insurance. (Doc. No. 350 at 14.)  However, there is no requirement under
17   the statute that defendants Dr. Lopez and Rideout must establish that they hold medical
18   malpractice insurance for MICRA's limitations on non-economic damages to apply, and plaintiff
19   has offered no legal authority to the contrary.

20          Third, plaintiff contends that MICRA does not apply here because this case involves a
21   non-professional negligence theory of liability involving the violation of hospital policies.  (Doc.
22   Nos. 344 at 7–11; 350 at 14–17.)  MICRA applies to "any action for injury against a health care
23   provider *based on professional negligence*." Cal. Civ. Code § 3333.2(a) (emphasis added).
24   "'Professional negligence' means a negligent act or omission to act by a health care provider in
25   the rendering of professional services, which act or omission is the proximate cause of a personal
26   injury or wrongful death, provided that such services are within the scope of services for which
27   the provider is licensed and which are not within any restriction imposed by the licensing agency
28   or licensed hospital." *Id.* § 3333.2(c)(2); *see also Flores v. Presbyterian Intercommunity Hosp.*,

1   63 Cal. 4th 75, 88–89 (2016).  The California Supreme Court found that "in the health care
2   context, the relevant professional service is medical care:  that is, the medical diagnosis and
3   treatment of patients."  *Flores*, 63 Cal. 4th at 85, 88–89 (holding that even an injury from
4   malfunctioning latch on rails to hospital bed constituted professional negligence because the
5   doctor ordered the rails on plaintiff's bed be raised following a "medical assessment" of her
6   condition); *see also Taylor*, 821 F.2d at 1432 (finding that plaintiff's injury caused by ventilator
7   becoming disconnected constituted professional negligence under MICRA).

8       Here, contrary to plaintiff's assertions, this case involved solely claims of professional
9   negligence as to the two healthcare provider defendants, and was not decided based on violations
10  of hospital policies as plaintiff contends.  This is apparent from a review of the jury's verdict, the
11  jury instructions, and plaintiff's own complaint.  The jury verdict form asks:  "Was defendant Dr.
12  Hector Lopez negligent *in the diagnosis or treatment of* plaintiff Joseph Daniel Nevis?" and "Was
13  Rideout Memorial Hospital/nurse Alejandro Gonzalez negligent *in the care or treatment of*
14  plaintiff Joseph Daniel Nevis?"  (Doc. No. 331 at 2) (emphasis added).  Moreover, the jury
15  instructions given at trial confirmed that plaintiff's only theories of liability involved professional
16  negligence; specifically, instruction numbers 23–24, which detailed the applicable standard of
17  care as to defendant Dr. Lopez as an emergency room physician; instruction number 25, which
18  detailed defendant Rideout's liability based on Dr. Lopez's failure to adhere to the standard of
19  care of an emergency room physician; and instruction numbers 26–27, which explained that nurse
20  Gonzalez and Rideout were to be treated as one defendant and assessed under the standard of care
21  for emergency room nurses.  (Doc. No. 333 at 25–29); *see also Flores*, 63 Cal. 4th at 85 (holding
22  that a professional negligence claim involves "the medical diagnosis and treatment of patients").
23  Finally, plaintiff's complaint is devoid of any allegations that his theory of liability as to
24  defendants Dr. Lopez and Rideout was based on anything other than professional negligence
25  because the purported violations of hospital policies are nowhere to be found in the complaint.
26  (*See* Doc. No. 1.)
27  /////
28  /////

Fourth, plaintiff contends MICRA does not apply to grossly negligent or reckless acts, and because one of plaintiff's experts commented in his trial testimony that in his opinion defendant Dr. Lopez was "grossly negligent" in his conduct, MICRA should not apply. (Doc. Nos. 344 at 12–13; 350 at 18–19.) "Gross negligence is a subspecies of negligence; it is not a separate tort" and has been defined "as either 'a want of even scant care' or 'an extreme departure from the ordinary standard of conduct.'" *Joshi v. Fitness Int'l, LLC*, 80 Cal. App. 5th 814, 825 (2022) (citations omitted). Plaintiff has not cited any legal authority for the proposition that MICRA does not apply to gross negligence even though it is a "subspecies" of professional negligence, which is covered under MICRA. *See id.*; Cal. Civ. Code § 3333.2(a). Even so, there was no evidence of gross negligence in this case aside from plaintiff's expert merely uttering the words "gross negligence" and the jury instructions and jury verdict form reflect that the jury received no instructions regarding gross negligence. (Doc. Nos. 331 at 2; 333 at 25–29.) Indeed, plaintiff's complaint is devoid of a recitation of the elements of a claim for gross negligence. (*Compare* Doc. No. 1 at ¶¶ 22–40 *with Joshi*, 80 Cal. App. 5th at 825.) As plaintiff admits in his objections, the court refused to instruct the jury regarding punitive damages because his expert's single reference to gross negligence were "just words." (Doc. No. 350 at 18.) Here, too, plaintiff's expert's testimony does not transform his claim for professional negligence into one for gross professional negligence.

For these reasons, plaintiff's various objections to the application of MICRA's cap to the award of noneconomic damages by the jury verdict are all overruled. Accordingly, judgment on the award of noneconomic damages will reflect the application of MICRA's statutory limitation of liability and Proposition 51's requirement that noneconomic damages are entered separately and severally as to each defendant in direct proportion to each defendant's percentage of fault. *See* Cal. Civ. Code §§ 1431.2(a), 3333.2(a)–(b).

**B.    Economic Damages**

Plaintiff contends that the court should enter judgment for the economic damages against all defendants jointly and severally. (Doc. Nos. 344 at 13–16; 350 at 4–10.) Defendants have not addressed this contention, nor have they raised any objections addressing the entering of

8

1  judgment as to the economic damages awarded by the jury in this case.

2  "An obligation imposed upon several persons, or a right created in favor of several persons, is presumed to be joint, and not several." Cal. Civ. Code § 1431; *see also Evangelatos v. Superior Ct.*, 44 Cal. 3d 1188, 1198 (1988) ("Proposition 51 retains the traditional joint and several liability doctrine with respect to a plaintiff's *economic* damages."); *Shuler v. Capital Agricultural Property Services, Inc.*, 49 Cal. App. 5th 62, 67 (2020) (finding that under California's joint and several liability doctrine, "each tortfeasor whose negligence is a proximate cause of an indivisible injury remains individually liable for all compensable damages attributable to that injury") (quoting *Am. Motorcycle Assn. v. Superior Ct.*, 20 Cal. 3d 578, 582 (1978)).

Here, the court agrees with plaintiff's counsel and sustains his objection to the court's previously proposed judgment language as to the entering of judgment with respect to the award of economic damages. The economic damages awarded by the jury amounted to $6.1 million (future medical expenses) and $1.5 million (future wages) for a total of $7.6 million. (Doc. No. 331 at 3.) The total amount of $7.6 million is first reduced by plaintiff's share of comparative fault (35%) resulting in a total award of $4,940,000 in economic damages, for which each defendant is jointly liable.[5] *See* Cal. Civ. Code § 1431.

Accordingly, judgment on the award of economic damages will be entered jointly against all of the defendants after being reduced by plaintiff's proportion of fault.

**CONCLUSION**

For the reasons explained above,

1. Defendant Dr. Lopez's motion as to non-economic damages (Doc. No. 340) is granted;

/////

/////

---

[5] As stated on the record at post-verdict status conferences, the court wishes to ensure that plaintiff Joseph Nevis is specifically, properly, and fully advised of the limitations placed on attorney fees by California Business & Professions Code § 6146 and that any reduction in his own recovery under the jury's verdict resulting from the manner in which the judgment is enforced occur only after such an advisement and with plaintiff's knowing consent. *See Waters v. Bourhis*, 40 Cal. 3d 424, 436–39 (1985). The court trusts that counsel will do so.

2. Plaintiff's objections to the court's proposed judgment language (Doc. No. 350) are sustained with respect to the entering of judgment on the award of economic damages in this case, but are overruled in all other respects; and

3. The Clerk of the Court is directed to enter judgment in this action in favor of plaintiff and against defendants as to all of plaintiff's claims, according to the verdict of the trial jury returned in open court on October 28, 2022, except as modified as follows:

    a. Judgment is entered in favor of plaintiff and against each defendant, severally, as to noneconomic damages awarded as follows:

        i. Defendant National Railroad Passenger Corporation shall owe $1,050,000 in noneconomic damages, severally;

        ii. Defendant Hector Lopez, MD shall owe $125,000 in noneconomic damages, severally; and

        iii. Defendant Rideout Memorial Hospital shall owe $125,000 in noneconomic damages, severally;

    b. Judgment is entered in favor of plaintiff and against defendant National Railroad Passenger Corporation, defendant Hector Lopez, MD, and defendant Rideout Memorial Hospital, jointly and severally, as to the economic damages awarded in the total amount of $4,940,000.

IT IS SO ORDERED.

Dated: __**December 21, 2022**__           /s/ Dale A. Drozd
                                             UNITED STATES DISTRICT JUDGE